IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW B., H.B. and D.B., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 05 C 4959 ) |
| BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DISTRICT 99 (Downers Grove, Illinois) and DR. DAVID R. EBLEN, Superintendent. | ) Wayne R. Andersen ) District Judge ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This action arises from a dispute regarding whether plaintiff Andrew B. is entitled to a free appropriate public education until the age of twenty-one under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §1400, *et seq*. This matter comes before the court on the parties' cross-motions for summary judgment. After receiving an adverse administrative decision under the procedures set forth by the IDEA, plaintiffs Andrew B. and his parents, H.B. and D.B., filed a complaint against defendants Board of Education of Community High School District 99 and Dr. David R. Eblen (collectively, "the School District"), appealing the administrative decision. For the following reasons, the court agrees with the administrative decision. The motion for summary judgment [19] filed by defendants Board of Education of Community High School District 99 and Dr. David R. Eblen is granted, and the cross-motion for summary judgment [27] filed by plaintiffs Andrew B. and his parents is denied.

## BACKGROUND

Andrew B. is a twenty year-old man who has cerebral palsy. He attended Downers Grove South High School from August 2000 until his graduation in June 2004. During high school, Andrew was eligible for and received special education services under the IDEA for an orthopedic impairment and a speech and language impairment. Andrew received vocational services, including occupational, physical and speech and language therapy. Andrew also received modifications and accommodations in the classroom, such as modified grading, study guides, teacher aide support, adaptations of his assignments to his level of ability, and time extensions on assignments and tests.

During his freshman year, Andrew's parents consented to allowing the School District to complete a comprehensive case study evaluation. As part of the case study evaluation, the School District reviewed Andrew's medical and health information, performed a social development study, evaluated Andrew's academic achievement, and prepared psychological, speech and language and occupational and physical therapy evaluation reports.

After the case study was completed, the School District held a multi-disciplinary conference on February 27, 2001 to discuss the results of the case study evaluation. The results of this evaluation showed Andrew to have a physical impairment as his primary disability and speech and language impairments as a secondary disability. The evaluation also showed Andrew to be a below average to slow learner, but not mentally retarded. The School District developed an individualized education program for Andrew following the comprehensive case study evaluation. Andrew participated in the individualized education program from his freshman through his senior years in high school.

2

During the fall semester of Andrew's senior year, the School District notified Andrew and his parents on more than one occasion that a re-evaluation of Andrew's individualized education program needed to be completed by February 2004 in order for the high school to be able to continue providing special education services for Andrew. The School District also explained to both Andrew and his parents in the letters that were sent them that the School District would need written consent from Andrew to perform another comprehensive case study evaluation since he now was over eighteen years-old and his parents no longer were his guardians. When the School District did not receive any response from Andrew or his parents, the chairman of Special Education Department at Downers Grove South High School discussed the re-evaluation with Andrew at school, showed him the consent form, and requested Andrew to sign it. After discussing this with his father, Andrew declined to sign the consent form.

On February, 11, 2004, the School District held a meeting with Andrew's education team to review his individualized education program and Andrew's progress under this program and to discuss Andrew's educational options following the 2003-2004 school year. The team members present at this meeting were Andrew and his parents, a representative of the Department of Rehabilitative Services, the chairman of the School District's Special Education Department, the dean of Downers Grove South High School, Andrew's school counselor, his case manager, his transition teacher, his speech and language pathologist, Andrew's occupational and physical therapists, the vocational coordinator, and one of Andrew's regular education teachers. At this meeting, the School District again raised the issue of consent to perform a case study evaluation, but Andrew, after consulting with his father, refused to sign the consent form.

During this meeting, Andrew's parents expressed concern about Andrew's slow progress in math and reading and requested that Andrew not graduate from high school until he was twenty-one. The School District offered to provide Andrew with services until he was twenty-one with the caveat that he consent to a case study evaluation. The School District suggested a program that would allow Andrew to take courses at the high school for a half-day and take courses in a vocational program at the Technology Center for DuPage for the remaining portion of the day. Andrew expressed interest in only one vocational program, auto mechanics, at the Technical Center of DuPage. However, the Technical Center of DuPage concluded that Andrew's physical limitations would prevent him from being accepted into that program. Andrew declined this option.

The School District also discussed a transitional program which utilized a functional curriculum. However, the education team agreed that the School District's transitional program was not appropriate for Andrew because it was based on skills he already had mastered.

The School District and education team also discussed the option of Andrew taking vocational classes at the College of DuPage, which would require Andrew to graduate from high school. On February 24, 2004, the School District's vocational coordinator, along with Andrew and his father, met with a special services coordinator at the College of DuPage to learn about programs available for Andrew. Andrew expressed interest in some of the programs. The special services coordinator suggested that Andrew take a math class in the summer to familiarize himself with the school. She noted that tutoring services also would be available as needed. The School District ultimately recommended that it would be educationally better for Andrew to graduate from high school and enroll in vocational classes at the College of DuPage.

Andrew enrolled in a summer introductory math course at the College of DuPage on May 25, 2004. On June 4, 2004, Andrew attended and took part in Downer Grove South High School's commencement ceremony. Andrew's math class at the College of DuPage began on June 14, 2004, but he withdrew from the class one week later on June 23, 2004.

In August 2004, Andrew and his father went to Downers Grove South High School to register for the 2004-2005 school year. However, the high school refused to let Andrew enroll because he had graduated in June. Two months later, Andrew and his parents requested a due process hearing provided for in the IDEA, 20 U.S.C. § 1415(b)(2), arguing that the School District had denied Andrew a free appropriate pubic education until the age of twenty-one.

The due process hearing took place on April 11 and April 13, 2005. At the hearing, Andrew's parents testified about Andrew's education progression. His father estimated that Andrew's reading and math skills were at a third grade level. Both parents also testified that Andrew never expressly stated a desire to graduate from high school and claimed that the School District had failed to provide Andrew with timely notice of his graduation. His parents claimed that Andrew first became aware that he had graduated when he attempted to enroll for classes in August 2004. Andrew and his parents also presented evidence from an independent psychological evaluation conducted by the Children's Research Triangle, which concluded, among other things, that individuals with similar cognitive and adaptive profiles to Andrew require school placement until twenty-one years of age.

The School District presented testimony from the chairman of Special Education Department and its vocational coordinator. They testified that Andrew possessed computer-related skills that would transfer well to vocational opportunities. The vocational coordinator also testified about the job-related training Andrew received during high school. Both the

5

vocational coordinator and Andrew's special education teacher testified that Andrew had lost interest in his course work during his senior year and that, in their opinion, Andrew would not benefit from returning to high school and his education needs would best be served by him moving onto vocational training.

The School District also presented testimony that Andrew's options were explained in detail to him and his parents at the team meeting that was held on February 11, 2004 and that Andrew and his parents were notified of his upcoming graduation at this meeting. The School District also submitted the Parent/Guardian Notification of Conference Recommendations, which contained the options offered by the School District to Andrew and had been mailed to Andrew and his parents.

Based on the evidence presented at the hearing, the hearing officer concluded that the School District had provided a free appropriate public education to Andrew in compliance with the IDEA. He also concluded that Andrew had graduated from Downers Grove South High School in June 2004 and that the School District did not have to rescind his graduation and re-enroll him in classes.

## STANDARD OF REVIEW

Though this matter comes before the court on the parties' cross-motions for summary judgment, the standard of review that this court must apply is different from a typical summary judgment analysis. IDEA standards dictate that a district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (2005). When neither party has requested that the district court hear additional evidence, as is the case here, "the motion for summary judgment is simply

the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. State of Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997) (quoting *Hunger v. Leininger,* 15 F.3d 664, 669 (7th Cir. 1994)).

Despite being captioned a motion for summary judgment, the court bases its decision on the preponderance of the evidence. *See* 20 U.S.C. § 1415(e)(2) (2005). Because plaintiffs challenge the hearing officer's decision in this case, plaintiffs have the burden of proof. *See Heather S.,* 125 F.3d at 1052 (citing *Board of Educ. of Community Consol. Sch. Dist. 21 v. Illinois State Bd. of Educ.,* 938 F.2d 712, 716 (7th Cir. 1991)). The Seventh Circuit has instructed district courts to give due weight to the outcome of the administrative proceedings but not to substitute its "own notions of sound educational policy for those of the school authorities" whose decision it is reviewing. *Id.* (citing *Board of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley,* 458 U.S. 176, 206 (1982)). Due weight necessarily implies giving some deference to the decision of the hearing officer, particularly in light of the officer's special expertise in education law. *See Board of Educ. of Murphysboro Community Unit Sch. Dist. No. 186 v. Illinois State Bd. of Educ.,* 41 F.3d 1162, 1167 (7th Cir. 1994). Due weight must be given to the decision of the hearing officer only and not to the testimony of witnesses or the evidence – both of which this court must independently evaluate. *Id.*

## DISCUSSION

Andrew and his parents challenge the hearing officer's decision, arguing that the School District failed to provide Andrew a free appropriate public education until the age of twenty-one and that the School District failed to provide Andrew with clear and timely notice of hiss graduation.

7

## I. The School District Provided Andrew with a Free Appropriate Public Education

To satisfy the requirements of the IDEA and the relevant Illinois School Code provisions, a school district must provide all disabled students between the ages of three and twenty-one with a free appropriate public education specifically tailored to the student's individual needs. *See* 10 U.S.C. §§1400(c), 1414(a)(5); 105 ILCS 5/14-8.02 (1992). The IDEA defines a free appropriate public education to be one that includes "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the [individualized education program] required under section 1414(a)(5) of this title." 20 U.S.C. § 1401(18) (2005).

In *Board of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley*, 458 U.S. 176 (1982), the Supreme Court interpreted a "free appropriate public education" to mean an education that has been "specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." 458 U.S. at 188-89. The Supreme Court then set forth a two-part standard that a school district must (1) comply with all procedures set forth in the IDEA and (2) create an individualized education program that is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206-207. Although the Supreme Court did not specifically explain how to interpret the phrase "reasonably calculated to enable the child to receive educational benefits," it did state that a school district need not furnish "every special service necessary to maximize each handicapped child's potential." *Id.* at 199.

The Seventh Circuit has considered this issue specifically and explained that an individualized education program must "respond to all significant facets of the student's disability." *Alex R., ex. Rel. Beth R. v. Forestville Valley Community Unit School Dist. #221*, 375 F.3d 603, 613 (7th Cir. 2004) (citing *CJN v. Minneapolis Pub. Sch.*, 323 F.3d 630, 642 (8th Cir. 2003)). The Seventh Circuit further stated that an individualized education plan is acceptable "when it is 'likely to produce progress, not regression or trivial educational advancement.'" *Id.* at 615 (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 248 (5th Cir. 1997)). The progress must be reasonable and the "requisite degree of reasonable, likely progress varies, depending on the student's abilities." *Id.* at 615. "Objective factors, such as regular advancement from grade to grade, and achievement of passing grades, usually show satisfactory progress." *Id.* (citing *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir.1998)).

Based on the standard set forth by the Supreme Court in *Rowley*, the hearing officer concluded that the School District provided Andrew with a free appropriate public education as required by IDEA. Specifically, the hearing officer found that the School District complied with all procedures set forth in the IDEA and developed an individualized education program that was reasonably calculated to provide an educational benefit for Andrew. After carefully reviewing the hearing officer's decision and the administrative record, the court agrees with the hearing officer's analysis and also concludes that the School District complied with the procedural safeguards set forth in the IDEA, providing Andrew with a free appropriate public education.

The record shows that during Andrew's freshman year, the School District completed a comprehensive case study evaluation in which the School District reviewed medical and health information, performed a social development study, evaluated Andrew's academic achievement,

and prepared psychological, speech and language and occupational and physical therapy evaluation reports. After the case study was completed, the School District and Andrew's education team developed an individualized education program required by the IDEA for Andrew and he participated in that program from his freshman through his senior years in high school.

During Andrew's senior year, the School District and Andrew's education team met again to review and evaluate his individualized education program. The education team evaluated Andrew's progression and advancement in obtaining skills that would assist him in a vocational program. The team also observed Andrew's interpersonal communication skills and his job-readiness capabilities. The team acknowledged that Andrew had some difficulty with his reading and writing skills and that he was uncomfortable in unfamiliar settings. Nevertheless, the School District ultimately recommended that Andrew move on to specific vocational training at the College of DuPage.

Andrew and his parents argue that the School District knew or should have known that he was not adequately prepared to advance to vocational training at the College of DuPage and that such training would not provide him with an educational benefit. The record shows that the School District and Andrew's education team discussed three options for Andrew at the meeting in February 2004. The first program proposed that Andrew remain in high school for reading and math and then participate in a vocational program at the Technology Center for DuPage for the remaining portion of the school day. However, Andrew refused to consent to a case study evaluation which the School District required for Andrew to remain in high school. Moreover, Andrew expressed interest in only one vocational program which was not feasible based on Andrew's physical limitations.

Another option discussed was a transition program for students between the ages of eighteen and twenty-one. However, the team did not think this was a good option for Andrew because this program was geared towards the acquisition of life skills, which the team felt Andrew already possessed. The third option proposed that Andrew take vocational classes at the College of DuPage. In order for Andrew to qualify for classes at the College of DuPage, he had to graduate from high school. Andrew's education team believed that enrolling in vocational training classes at the College of DuPage would provide a better educational benefit for Andrew.

As discussed above, the record shows that the School District and Andrew's education team met during Andrew's senior year to evaluate his progress and determine what should be the next step in his education, including what program would provide Andrew with the most educational benefits. The record shows that based on the options provided by the School District and Andrew's education team, Andrew, with his parents' knowledge, chose to enroll in a summer math class at the College of DuPage. It is clear that this had the potential to provide some achievable educational benefit for Andrew. The record shows that based on an overall assessment of his individualized education program, the School District and Andrew's education team concluded that Andrew would benefit more from specific vocational training. In order to move on to the vocational training, Andrew needed to graduate from high school in June 2004.

Based on the administrative record and the hearing officer's decision, this court concludes the School District provided Andrew with a free appropriate public education and that its recommendation to graduate Andrew resulted from a careful analysis and consideration of Andrew's progress and the educational benefits to Andrew.

## II. The School District's Decision to Graduate Andrew Was Appropriate

Andrew and his parents also argue that Andrew was not notified that he was going to graduate from high school. The hearing officer acknowledged that a school district's failure to provide clear and timely notification of a student's completion of high school requirements and graduation would be a violation of the IDEA. *See* 105 ILCS 5/14-16(b). However, the hearing officer concluded, and this court agrees, that Andrew and his parents were, in fact, notified of the School District's assessment that Andrew had completed his high school requirements and that he would be graduated in June 2004.

The record shows that following the education team's February 11, 2004 meeting Andrew and his father met with a counselor at the College of DuPage and enrolled Andrew in a math course on May 25, 2004. Graduating from high school was a component of this option, which was explained to Andrew and his parents at the February 11, 2004 meeting. Also, in the Parental Notification of Conference Recommendations sent to Andrew and his parents after the team meeting, recommended for graduation clearly was marked.

The record demonstrates that Andrew earned sufficient credits to graduate from high school and completed everything necessary for him to receive his high school diploma. Based on the administrative record, the court agrees with the hearing officer's conclusion that the School District provided clear and timely notice of Andrew's graduation and did not violate his right to a free appropriate pubic education by graduating him from high school in June 2004.

## CONCLUSION

For the reasons stated in the court's Memorandum, Opinion and Order, the motion for summary judgment [19] filed by defendants Board of Education of Community High School District 99 and Dr. David R. Eblen is granted, and the cross-motion for summary judgment [27] filed by plaintiffs Andrew B. and his parents is denied. This is a final and appealable order, terminating the case.

It is so ordered.

　　　　　　　　　　　　　　　　　　　　　　　　Wayne R. Andersen
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: October 27, 2006